Paul D. Sarkozi (PS 8977)
Kim F. Bridges (KB 1306)
HOGAN & HARTSON LLP
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
*Attorneys for Defendant Prima Charter Sp. z o. o.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLIANCE CONTINENTAL LEASING LLC, ) | Case No. 08-cv-1027 (JSR) |
| ) | |
| Plaintiff, ) | |
| ) | |
| - against - ) | |
| ) | |
| PRIMA CHARTER Sp. z o. o., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS**

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................1

STATEMENT OF FACTS ........................................................................2

     A.    April Lease Proposal...............................................................2

     B.    June Lease Commitment and July Lease Proposal.........................3

     C.    Lease....................................................................................4

     D.    Prima's Alleged Breach – and the Lease's Acknowledgement
         that Prima Performed.............................................................4

     E.    Alliance Fails to Deliver the Aircraft .......................................5

     F.    Causes of Action Asserted......................................................5

ARGUMENT .......................................................................................6

  I.    Alliance Fails to State a Claim For Which Relief Can Be Granted on
       its Breach of Contract Claim ...................................................6

  II.   Alliance Fails to State a Claim For Which Relief Can Be Granted on
       its Breach of Implied Covenant of Good Faith and Fair Dealing Claim ......9

CONCLUSION.....................................................................................10

TABLE OF AUTHORITIES

Cases

*Advanced Marketing Group, Inc. v. Business Payment Systems, LLC,*
    481 F.Supp.2d 319 (S.D.N.Y. 2007)..................................................................8

*American Bldg. Maint. Co. v. Acme Property Services, Inc.,*
    515 F.Supp.2d 298 (N.D.N.Y. 2007)...........................................................9, 10

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
    493 F.3d 87 (2d Cir. 2007)..........................................................................6

*Bell Atlantic Corp. v. Twombly,*
    --- U.S. ---, 127 S.Ct 1955, 1974 (2007)...................................................6

*Cortec Indus., Inc. v. Sum Holding, L.P.,*
    949 F.2d 42 (2d Cir. 1991).....................................................................2 n.2

*Dover Ltd. v. A. B. Watley, Inc.,*
    423 F.Supp.2d 303 (S.D.N.Y. 2006)..........................................................10

*Gitnik v. Home Depot U.S.A., Inc.,*
    No. 07 CIV 1244(MDF),
    2007 WL 2728358 (S.D.N.Y. Sept. 18, 2007)....................................6, 7, 8

*Harris v. Provident Life & Accident Ins. Co.,*
    310 F.3d 73 (2d Cir. 2002).......................................................................9

*Harsco Corp. v. Segui,*
    91 F.3d 337 (2d Cir. 1996).......................................................................7

*ICD Holdings S.A. v. Frankel,*
    976 F.Supp. 234 (S.D.N.Y. 1997)............................................................9

*Nader v. ABC Television, Inc.,*
    330 F.Supp.2d 345 (S.D.N.Y. 2004).........................................................9

*R. H. Damon & Co. v. Softkey Software Prod., Inc.,*
    811 F.Supp. 986 (S.D.N.Y. 1993)........................................................2 n.2

*Rapoport v. Asia Electronics Holding Co.,*
    88 F.Supp.2d 179 (S.D.N.Y. 2000)..........................................................7

*RJE Corp. v. Northville Indus. Corp.,*
    329 F.3d 310 (2d Cir. 2003).....................................................................8

*Twinlab Corp. v. Signature Media Services, Inc.,*
    No. 99 Civ. 169(AGS),
    1999 WL 1115237 (S.D.N.Y. Dec. 7, 1999) ...........................................................................7


Rules

Federal Rule of Civil Procedure 12(b)(6) ...................................................................1, 6

Defendant Prima Charter Sp. z o. o. ("Prima") respectfully submits this memorandum of law in support of its motion to dismiss with prejudice Counts I and II of the Complaint of Alliance Continental Leasing LLC ("Alliance"), dated January 31, 2008 ("Complaint"), pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## Preliminary Statement

Alliance's own allegations, and the parties' agreements upon which Alliance's claims are premised, reveal not only that Alliance fails to state a claim on its breach of contract and breach of the implied covenant of good faith and fair dealing claims – but more importantly, that defendant *Prima*, *not* Alliance, is the real injured party here.

The contract at issue is an agreement for Prima, a Polish charter travel company, to lease an aircraft from Alliance (the "Lease"). The crux of Alliance's allegations are that Prima "failed and refused" to pay a $750,000 security deposit payable on or before the date Alliance was to deliver the aircraft to Prima. But the Lease, upon which Alliance purportedly bases its claims for breach, unequivocally states that Prima *paid* the $750,000 security deposit at issue. In light of this contractual language, Counts I and II of the Complaint should be dismissed.

While the Lease is clear that Prima performed, Alliance concedes in its own Complaint that it did not deliver *any* aircraft to Prima – even though the Lease plainly states that Prima paid Alliance a $750,000 security deposit, and the Complaint concedes that Prima paid Alliance a $150,000 maintenance reserve deposit. Remarkably, despite depriving Prima of the benefit of its bargain under the Lease, Alliance has retained Prima's $900,000 in deposits. Prima intends to counterclaim for *Alliance's* breach of the Lease, which has caused Prima to sustain damages

totaling approximately $8 million.  Prima will further seek a determination under Alliance's

declaratory judgment claim that Prima is the rightful owner of the $900,000 in deposits.

## STATEMENT OF FACTS

Alliance's Complaint is premised upon a series of agreements between Alliance, a

company in the business of leasing aircraft and related equipment, and Prima, a chartered

transportation company that provides tourist flight services in Europe.  (Compl. ¶¶ 6-7.)

### A.    April Lease Proposal

Alliance alleges that Prima accepted a Lease Proposal on April 18, 2007 for two Boeing

757-200 aircraft, serial numbered 28143 and 28144 ("April Lease Proposal").  (Compl. ¶ 8; Ex.

A[1] (April Lease Proposal)[2].)  Alliance concedes that Prima paid a cash retainer deposit of

$250,000 for each aircraft in conjunction with its acceptance of the April Lease Proposal, for a

total of $500,000.  (Compl. ¶ 8; Ex. A (April Lease Proposal) at 5.)  The parties intended this

cash retainer deposit to "be credited against the first rental due on delivery of the Aircraft"

"[u]pon the execution of definitive lease contracts. . . ."  (Ex. A (April Lease Proposal) at 5.)

The April Lease Proposal further provided that the deposit was "non-refundable except as

expressly provided herein":

> In the event that Alliance Continental Leasing, LLC does not
> approve the transaction (in accordance with paragraph entitled
> "Preconditions" above) the security deposits shall be returned to
> [Prima], upon receipt of [Prima's] bank account details.  In the
> event the aircraft does not meet the compliance requirements

---

[1] All references to "Ex. __" shall refer to exhibits to the Declaration of Kim F. Bridges in
Support of Defendant's Motion to Dismiss, dated March 12, 2008.

[2] The Lease and two Lease Proposals may be considered on this motion to dismiss without
converting it to a summary judgment motion because: (1) Alliance, as a party to these
agreements, clearly had notice of them; and (2) Alliance's repeated reference to these agreements
in its Complaint render them integral to Alliance's claims.  *See Cortec Indus., Inc. v. Sum
Holding, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *R. H. Damon & Co. v. Softkey Software Prod.,
Inc.*, 811 F.Supp. 986, 989(S.D.N.Y. 1993).

> and or [Alliance] is unable to provide a substitute aircraft, of like
> kind make and model, than the deposit shall become fully
> refundable, less any accumulated expenditures.

(Ex. A (April Lease Proposal) at 5.)

Alliance conceded that it never delivered the two aircraft contemplated by the April

Lease Proposal because it determined that these aircraft "did not meet Prima's needs." (Compl.

¶ 10.) Despite the plain language of the April Lease Proposal indicating that Prima's "deposit

shall become fully refundable, less any accumulated expenditures" "[i]n the event the aircraft

does not meet the compliance requirements" (Ex. A (April Lease Proposal) at 5), Alliance does

not allege anywhere in the Complaint that it refunded Prima's $500,000 deposit. To the contrary,

Alliance claims it has the right to retain these funds. (Compl. ¶¶ 8-9.)

**B.    June Lease Commitment and July Lease Proposal**

Alliance and Prima then began discussions about a different aircraft. (Compl. ¶ 12.)

Alliance provided Prima with a Lease Commitment letter dated June 26, 2007 outlining the

terms for leasing this aircraft, a Boeing 757-200 aircraft, serial number 24121 ("June Lease

Commitment"). (*Id.* ¶¶ 13-14.) Alliance provided Prima with a Lease Proposal containing the

terms of the June Lease Commitment on June 26, 2007, which Alliance alleges Prima accepted

on or about July 27, 2007 ("July Lease Proposal"). (*Id.* ¶¶ 14-15.)

Alliance admits that Prima paid a cash retainer deposit of $250,000 as part of the July

Lease Proposal. (Compl. ¶ 15; Ex. B (July Lease Proposal) at 4.) Taking identical language

from the April Lease Proposal, Prima's $250,000 deposit would have been "credited against the

first rental due on delivery of the Aircraft" "upon the execution of definitive lease contracts".

(Ex. B (July Lease Proposal) at 4.) The July Lease Proposal also contained the identical clause

from the April Lease Proposal stating that the deposit was "non-refundable except as expressly

provided herein" and outlining the same conditions under which Prima's deposit could be

returned. (Ex. B (July Lease Proposal) at 4.) Alliance now had in its possession $750,000 of Prima's deposits. (Compl. ¶¶ 8, 15.)

**C.    Lease**

Alliance alleges that the parties formally executed the Lease, dated as of August 8, 2007, to lease a Boeing aircraft bearing the same serial number as the June Lease Commitment and July Lease Proposal, 24121 (the "Aircraft"). (Compl. ¶ 21; Ex. C (Lease) at 1.) Alliance points to the Lease's requirement that "Alliance was 'not' required to 'deliver and start the leasing of the Aircraft under [the] Lease unless each of the Conditions Precedent' to the Lease were 'satisfied.'" (Compl. ¶ 22.) Alliance alleges that one of the Conditions Precedent to the Lease is a requirement that "Prima pay 'all sums due to [Alliance] under [the] Lease on or before the Delivery Date.'" (*Id.* ¶ 22.)

**D.    Prima's Alleged Breach – and the Lease's Acknowledgement that Prima Performed**

Alliance alleges that the Lease required Prima to pay a $750,000 security deposit and a $150,000 maintenance reserve deposit on or before the Delivery Date. (Compl. ¶ 23.) While conceding that Prima paid the $150,000 maintenance reserve deposit, Alliance alleges that Prima "failed and refused to pay" the $750,000 security deposit (*Id.* ¶ 23) – an amount equal to the cash retainer deposits already paid by Alliance under the Lease Proposals (*Id.* ¶¶ 8, 15). Alliance claims that Prima's "failure and refusal to pay" the $750,000 security deposit constituted an Event of Default that permits Alliance to sue to recover damages for breach of the Lease. (*Id.* ¶¶ 24-25.)

But conspicuously absent from the Complaint are allegations discussing Section 5.1 of the Lease:

> Each of Lessee and Lessor acknowledges that Lessee was required
> to pay, *and has previously paid*, to Lessor: (a) a security deposit
> equal to the Deposit; and (b) a maintenance reserve deposit in the
> amount of $150,000 (collectively with the Deposit, the "Deposited
> Amounts").

(Ex. C (Lease), Section 5.1 (emphasis added).)  The Lease defined "Deposit" to mean

"$750,000," the very sum Prima had already paid to Alliance.  (Ex. C (Lease), Schedule 1.)

### E.    Alliance Fails to Deliver the Aircraft

Alliance concedes that it failed to deliver the Aircraft to Prima as promised because "it

was unable to acquire the Aircraft from AeroTurbine/Wells Fargo, and the Aircraft was sold to

another party." (Compl. ¶ 27.)  Alliance also concedes that Prima demanded its $750,000

deposit and $150,000 maintenance deposit back after Alliance failed to deliver the Aircraft, but

that Alliance refused to issue a refund.  (*Id.* ¶¶ 28-29.)

### F.    Causes of Action Asserted

Alliance asserts three causes of action: (1) a breach of contract claim, alleging that Prima

breached the Lease by failing to pay the $750,000 security deposit (Compl. ¶¶ 30-33); (2) a

breach of the implied covenant of good faith and fair dealing claim, alleging the same allegations

made in support of Alliance's breach of contract claim, *i.e.*, that Prima failed to pay the $750,000

security deposit required under the Lease (*id.* ¶¶ 34-37); and (3) a declaratory judgment claim,

alleging that Alliance is the rightful owner of the $750,000 security deposit and the $150,000

maintenance reserve deposit because Alliance performed its obligations under the Lease

Proposals and the Lease (*id.* ¶¶ 38-44).  Prima moves to dismiss Alliance's first and second

claims, Counts I and II.

## Argument

A motion to dismiss a cause of action should be granted where the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S.Ct 1955, 1974 (2007). All factual allegations in the complaint must be taken as true, and all reasonable inferences arising from these allegations must be drawn in plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). A court may also consider on a motion to dismiss "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference and . . . documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *Id.*; *see Gitnik v. Home Depot U.S.A., Inc.*, No. 07 CIV 1244(MDF), 2007 WL 2728358, at * 2-3 (S.D.N.Y. Sept. 18, 2007) (granting motion to dismiss breach of contract claim where clear language in contract upon which complaint was based precluded claim).

**I.    Alliance Fails to State a Claim For Which Relief Can Be Granted on its Breach of Contract Claim**

Alliance's Complaint and the language of the Lease preclude Alliance from pursuing a breach of contract claim based on a failure to pay the security deposit at issue here. Alliance concedes in its Complaint that Prima paid $500,000 in two cash retainer deposits in accordance with the April Lease Proposal (Compl. ¶ 8) and a subsequent $250,000 cash retainer deposit in accordance with the July Lease Proposal (*id.* ¶ 15), for a total of $750,000. Moreover, Section 5.1 of the Lease acknowledges that Prima's prior payments of $750,000 satisfied the Deposit required by the Lease:

> Each of Lessee and Lessor acknowledges that Lessee was required to pay, *and has previously paid*, to Lessor: (a) a security deposit equal to [$750,000]; and (b) a maintenance reserve deposit in the

amount of $150,000 (collectively with the Deposit, the "Deposited Amounts").

(Ex. C (Lease), Section 5.1 (emphasis added); Schedule 1 ("Deposit" defined to "mean[] $750,000").)

Section 5.1 squarely contradicts Alliance's allegations of breach. Alliance claims that Prima failed to pay on or before the Aircraft's delivery date "a security deposit in the amount of $750,000 and a maintenance reserve deposit in the amount of $150,000. Prima paid the latter, but failed and refused to pay the security deposit to Alliance." (Compl. ¶ 23.) According to Alliance, "Prima's failure and refusal to pay the $750,000 security deposit to Alliance on or before the Delivery Date constituted an Event of Default under the Lease," which entitles Alliance to recover damages for breach of the Lease. (*Id.* ¶¶ 24-25.)

In order to state a claim for breach of contract, plaintiff must allege: (1) the existence of an agreement; (2) adequate performance of the contract by plaintiff; (3) a breach of the contract by defendant; and (4) damages. *See Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir. 1996). Where, as here, a contract's plain and unambiguous language demonstrates that defendant has performed, plaintiff's breach of contract claim must fail. *See Gitnik,* 2007 WL 2728358, at * 2-3 (dismissing breach of contract claim where contract "clearly states" that defendant's performance was proper under its terms); *Twinlab Corp. v. Signature Media Services, Inc.,* No. 99 Civ. 169(AGS), 1999 WL 1115237, at * 5 (S.D.N.Y. Dec. 7, 1999) (dismissing breach of contract counterclaim where allegations and contract "sets forth no facts upon which a court could find" a breach) (internal citations omitted). Because Alliance's allegations are contradicted by the Lease itself, Alliance has failed to properly allege a breach of contract by Prima, and its claim must fail. *See Rapoport v. Asia Electronics Holding Co.,* 88 F. Supp.2d 179

(S.D.N.Y. 2000) (dismissing securities fraud complaint where documents upon which complaint relies contradict complaint's allegations).

Any argument by Alliance that Prima's $750,000 "non-refundable cash deposit(s)" were made under the Lease Proposals and cannot constitute the $750,000 Deposit required by the Lease (Compl. ¶ 15, *see also id.* ¶ 9) belies the plain language of the Lease. "Contract terms are not ambiguous if they have a definite and precise meaning and are not reasonably susceptible to differing interpretations." *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003) (internal quotations omitted); *see Gitnik*, 2007 WL 2728358, at * 2 (quoting *RJE Corp.*). Alliance cannot plausibly maintain that the Lease's acknowledgement that Prima "has previously paid . . . a security deposit equal to the Deposit" of $750,000 deposit due means that Prima somehow "failed and refused" to pay the security deposit under the Lease. (Ex. C (Lease), Section 5.1)

Alliance also lacks allegations that *it* adequately performed the Lease. Where the complaint and the contract at issue demonstrate that the plaintiff failed to perform, the complaint must be dismissed for failure to plead the element of performance by the plaintiff. *See Advanced Marketing Group, Inc. v. Business Payment Systems, LLC*, 481 F.Supp.2d 319, 322 (S.D.N.Y. 2007) (motion to dismiss granted where plaintiff's own statistics demonstrate that it failed to perform). Alliance concedes in its Complaint that "it was unable to acquire the Aircraft from AeroTurbine/Wells Fargo, and the Aircraft was sold to another party" (Compl. ¶ 27), and therefore, was unable to deliver the Aircraft as it had promised Prima. As Alliance admitted in its own Complaint and as Prima will demonstrate in its counterclaims, it was *Alliance* who breached the Lease, not Prima.

II.    **Alliance Fails to State a Claim For Which Relief Can Be Granted on its Breach of Implied Covenant of Good Faith and Fair Dealing Claim**

Alliance's breach of implied covenant of good faith and fair dealing must fail because Alliance has not made any allegations beyond those that support its claim for breach of contract. "Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Harris v. Provident Life & Accident Ins. Co.,* 310 F.3d 73, 80 (2d Cir. 2002) (internal quotations omitted). Accordingly, "New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when it is based on the same facts as a breach of contract claim." *American Bldg. Maint. Co. v. Acme Property Services, Inc.,* 515 F.Supp.2d 298, 319 (N.D.N.Y. 2007); *see ICD Holdings S.A. v. Frankel,* 976 F.Supp. 234, 243-44 (S.D.N.Y. 1997) (same). New York courts will not hesitate to dismiss a claim for breach of the implied covenant of good faith and fair dealing based on the very same allegations and breach of the underlying contract alleged in a breach of contract claim. *See Harris,* 310 F.3d at 80 (affirming dismissal of breach of good faith and fair dealing claim as "duplicative"); *Nader v. ABC Television, Inc.,* 330 F. Supp. 2d 345, 349 (S.D.N.Y. 2004) (Rakoff, J.) (dismissing breach of good faith and fair dealing claim at summary judgment as "entirely duplicative" of breach of contract claim); *ICD Holdings,* 976 F.Supp. at 243-44 (dismissing breach of good faith and fair dealing claim because it "rests entirely on the breaches of the purchase agreement alleged in the [breach of contract] claim . . .").

Here, Alliance reincorporates its breach of contract allegations by "repeat[ing]" and "realleg[ing]" that Prima has breached the implied covenant of good faith and fair dealing claim "[b]y reason of the foregoing" allegations. (Compl. ¶¶ 34-35.) This is not enough. *See American Building Maint.,* 515 F.Supp.2d at 319-20 (dismissing claim of breach of good faith and fair dealing where plaintiff simply repeated and realleged complaint's allegations). Alliance

has not made, and cannot make, a single allegation in support of its breach of good faith claim apart from the allegations contained in its breach of contract claim. Accordingly, Alliance's claim for breach of implied covenant of good faith and fair dealing must be dismissed as duplicative and because Alliance failed to adequately allege an underlying breach of contract by Prima. *See Dover Ltd. v. A. B. Watley, Inc.,* 423 F.Supp.2d 303, 328-30 (S.D.N.Y. 2006).

### Conclusion

For the reasons stated herein, Prima respectfully requests that the Court dismiss Counts I and II of the Complaint with prejudice.

Dated: New York, New York
　　　　March 13, 2008

                                   Respectfully submitted,

                                   HOGAN & HARTSON LLP


                                   By:  __/s/_____
                                          Kim F. Bridges (KB 1306)

                                   Paul D. Sarkozi (PS 8977)
                                   875 Third Avenue
                                   New York, NY 10022
                                   Telephone:  (212) 918-3000
                                   Facsimile:  (212) 918-3100

                                   *Attorneys for Defendant Prima Charter Sp. z o. o.*

Certificate of Service

The undersigned certifies that copies of the foregoing DECLARATION OF KIM F.

BRIDGES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, sworn to on March 12,

2008, and DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO

DISMISS, dated March 13, 2008, were enclosed in a properly addressed wrapper and deposited

into the custody of Federal Express delivery service for overnight delivery, prior to the latest

time designated by Federal Express delivery service for overnight delivery on March 13, 2008,

and thus were caused to be served upon the following counsel of record.

Andrew Fishkin (AF 7571)
David N. Cohen
Steven M. Lucks
Edwards Angell Palmer & Dodge LLP
750 Lexington Avenue
New York, New York 10022
Telephone: (212) 308-4411


    /s/
Kim F. Bridges