Andrew P. Fishkin (AF7571)
Steven M. Lucks (SL2711)
EDWARDS ANGELL PALMER & DODGE LLP
750 Lexington Avenue
New York, New York 10022
(212) 308-4411
*Attorneys for Plaintiff Alliance Continental Leasing LLC*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

ALLIANCE CONTINENTAL LEASING LLC,

        Plaintiff,

v.

PRIMA CHARTER Sp. z. o. o.,

        Defendant.

Case No: 08 CV 1027 (JSR)

---

**PLAINTIFF ALLIANCE CONTINENTAL LEASING LLC'S
MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANT'S MOTION TO DISMISS</u>**

## **TABLE OF CONTENTS**

**Page**

COUNTER-STATEMENT OF FACTS ................................................................................... 1

LEGAL ARGUMENT ............................................................................................................. 5

I.    Prima's Motion to Dismiss Should be Converted to a
Motion for Summary Judgment and Denied .................................................................. 5

II.    Prima's Motion Should be Denied Even if the Court Treats
it as a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) .............................................. 6

CONCLUSION ......................................................................................................................... 8

## TABLE OF AUTHORITIES

**Page**

**Cases**

Batista v. City of New York, 2007 WL 2822211 (S.D.N.Y. 2007) ............................................. 5, 6

Bell Atlantic Corp. v. Twombly, --U.S.--, 127 S.Ct. 1955 (2007) ................................................. 7

Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986) ...................................................... 6

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002) ........................................................ 6

Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42 (2d Cir. 1991),
    cert denied 503 U.S. 960, 112 S. Ct. 1561 (1992) ..................................................................... 5

Erickson v. Pardus, --U.S.--, 127 S.Ct. 2197 (2007) ....................................................................... 6

Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150 (2d Cir. 2006) .................... 5

Liberty Mut. Ins. Co. v. N. Picco & Sons Contracting Co., Inc.,
    2008 WL 190310 (S.D.N.Y. 2008) ............................................................................................ 5

Ofori-Tenkorang v. Am. Int'l Group, Inc., 460 F.3d 296 (2d Cir. 2006) ......................................... 7

Villager Pond, Inc. v. Town of Darien, 56 F.3d 375 (2d Cir. 1995) ................................................ 7

**Rules**

Fed. R. Civ. P. 8(a)(2) ....................................................................................................................... 6

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 5, 6, 7

Fed. Rule Civ. P. 56 ...................................................................................................................... 5, 6

Alliance Continental Leasing LLC ("Alliance") respectfully submits this memorandum of law in opposition to defendant Prima Charter Sp. z. o. o's ("Prima") motion to dismiss Count I of the Complaint[1].

## COUNTER-STATEMENT OF FACTS

Alliance is in the business of renting and leasing aircraft and related equipment. (Compl. ¶6). Defendant, Prima is a chartered transportation company that provides tourist flight services in Poland. (Compl. ¶7).

On or about April 18, 2007, Prima accepted a Lease Proposal from Alliance for two Boeing 757-200 aircraft. The Lease Proposal provided that "[u]pon" Prima's "acceptance of [its] terms and conditions . . . a cash deposit of USD $250,000 . . . Per Aircraft, shall be due immediately and must be received by [Alliance] within Five business days . . . ." (Ex. A at 5 ("Acceptance")). In accordance with the terms of the Lease Proposal, with its acceptance, Prima paid Alliance two cash retainer deposits of $250,000 each. (Compl. ¶8). The Lease Proposal stated that the deposits were non-refundable except in the event Alliance did not approve the lease transaction or was unable to provide aircraft compliant with Prima's requirements. (Compl. ¶9; Ex. A at 5 ("Acceptance"))[2]. After Alliance initially located two aircraft that did not meet Prima's needs, Prima refused Alliance's offer to lease substitute aircraft that were compliant with Prima's requirements. (Compl. ¶¶10-11).

Around the time Prima refused Alliance's offer to lease compliant aircraft under the Lease Proposal, Alliance and Prima engaged in discussions regarding the lease of another aircraft. (Compl. ¶12). On June 14, 2007, in contemplation of this "new" lease transaction with

---

[1] Alliance does not oppose Prima's motion insofar as it seeks the dismissal of Count II of the Complaint, for Prima's breach of the implied covenant of good faith and fair dealing.

[2] Unless otherwise stated, all exhibits are annexed to the March 27, 2008 Declaration of Steven M. Lucks submitted herewith.

Prima, Alliance offered to purchase a 1988 B757-236 aircraft, serial no. 24121 (the "Aircraft"), from AeroTurbine, Inc. (Compl. ¶13; Ex. B). On June 26, 2007, Alliance sent Prima a Lease Commitment outlining "the parameters" under which Alliance would lease the Aircraft to Prima. The Lease Commitment stated, inter alia, that the lease would be for a term of forty-eight (48) months, at a monthly rental payment of $215,000. (Compl. ¶14; Ex. C).

Contemporaneous with the issuance of the Lease Commitment, Alliance also provided Prima a Lease Proposal for the Aircraft, which Prima accepted on or about July 27, 2007. (Compl. ¶15; Ex. D). The Lease Proposal memorialized that (i) the lease for the Aircraft would be for a term of forty-eight months, at a monthly rental payment of $215,000, (ii) a "cash retainer deposit" of "$250,000 . . . shall be due immediately and must be received by [Alliance] within Five business days of [Prima's] acceptance of the Lease Proposal," and (iii) "[u]pon execution of the formal lease agreements, [Prima] will pay [Alliance] a security deposit in cash equal to $750,000 USD." (Compl. ¶15; Ex. D). Prima paid the $250,000 cash retainer deposit required under the "new" Lease Proposal and, as was the case under the earlier Lease Proposal, it was non-refundable except in the event Alliance did not approve the lease transaction or was unable to provide an aircraft compliant with Prima's requirements. (Compl. ¶16; Ex. D).

Following Prima's acceptance of the Lease Proposal and payment of the $250,000 cash retainer deposit under it, Alliance sent Prima an Aircraft Lease Agreement for execution by Prima. (Ex. E). The Lease Agreement memorialized the terms under which Alliance would agree to lease the Aircraft to Prima, including that it was for a term of forty-eight months, at a base monthly rental payment of $215,000, and confirmed, at ¶5.1, that Prima had not paid the $750,000 "security deposit" required under the Lease Agreement and referenced in the Lease

Proposal. The Lease Agreement stated: "Lessee shall pay Lessor a Security Deposit, equal to $750,000.00 USD." (Ex. E at ¶5.1).

Prima executed and returned to Alliance a different version of the lease agreement that, contrary to the parties' agreement, and the facts, purported to memorialize that the $750,000 security deposit required under the Lease Agreement had been paid, which was of course untrue. (Ex. F at ¶5.1). Although Prima had made payments to Alliance totaling $750,000 to that date, the payments were for the three non-refundable $250,000 deposits due and owing by Prima to Alliance under the two Lease Proposals; the payments were unrelated to the security deposit required under the Lease Agreement.

John Green, Alliance's Managing Director and CEO, received and reviewed the adulterated version of the Lease Agreement returned by Prima and, in his own handwriting, struck the inaccurate language it contained in ¶5.1 in order to properly reflect the parties' agreement and that Prima had *not* paid the $750,000 security deposit owed under the Lease Agreement. (Ex. G (hereinafter, the "Lease")). Alliance thereafter forwarded the Lease to Prima who accepted it without objection.

Mr. Green and Alliance never signed the version of the lease agreement attached to Prima's motion to dismiss at ex. C to the Bridges declaration. In fact, by presenting and attempting to rely on that document, Prima is committing a fraud upon the Court. As the Court will see, whereas the only version of the lease agreement that Prima returned to Alliance contained the phrase, at the top of the signature page, "IN WITNESS whereof the parties hereto have executed this Lease on the date shown at the beginning of the document" (Ex. F at 37), the signature page in the document annexed to the Bridges declaration at ex. C contains no such language. Moreover, although the signature above Mr. Green's name on page 37 of the

document annexed to the Bridges declaration appears to be Mr. Green's signature, Mr. Green never signed that document. Given the foregoing, only one of two conclusions may be drawn: Prima either copied the signature page to the document annexed to the Bridges declaration (with Mr. Green's signature) from another agreement between the parties and attempted to doctor it so that it would appear to be page 37 of the lease agreement Prima returned to Alliance, or Prima copied Mr. Green's signature from another document and photocopied it onto a new template signature page that it prepared and annexed as page 37 to the document it made an exhibit to the Bridges declaration.

Putting Prima's fraud aside, the Lease agreed to by the parties and upon which Alliance bases its claims stated that Alliance was "not" required to "deliver and start the leasing of the Aircraft under [the] Lease unless each of the Conditions Precedent" to the Lease were "satisfied." (Ex. G at ¶ 3.1). Among the "Conditions Precedent" was that Prima pay "all sums due to [Alliance] under [the] Lease on or before the Delivery Date." (Compl. ¶22; Ex. G at Schedule 3, ¶1). Among the sums due and owing to Alliance under the Lease on or before the Delivery Date was the security deposit in the amount of $750,000. (Compl. ¶23; Exh. G at Schedule 1, "Deposit").

Despite the terms of the Lease, Prima failed and refused to pay the $750,000 security deposit due and owing to Alliance. (Compl. ¶24). Prima's failure and refusal to pay that sum constitutes an "Event of Default" under the Lease (Ex. G at Schedule 9, ¶(a)), and the Lease provides that where an Event of Default occurs, Alliance can "proceed by appropriate court action . . . to recover damages for the breach of [the] Lease," including for all losses, including lost profits, Alliance sustained by reason of the default as well as all "sums" Alliance "expend[s]," including "all costs and expenses (including legal costs)" arising out of Prima's

default. (Compl. ¶¶25-26; Exh. G at ¶¶13.2(b), 13.3; 15.5). Alliance brought this action to recover its damages, including its lost profits, arising from Prima's breach of the Lease.

## LEGAL ARGUMENT

### I. Prima's Motion to Dismiss Should be Converted to a Motion for Summary Judgment and Denied

When determining the sufficiency of a plaintiff's complaint on a motion to dismiss, the Court "must limit its consideration to (1) the factual allegations in plaintiff's [ ] complaint, which must be accepted as true, (2) documents attached to the complaint as exhibits or incorporated in it by reference, (3) matter of which judicial notice may be taken, and (4) documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Liberty Mut. Ins. Co. v. N. Picco & Sons Contracting Co., Inc., 2008 WL 190310, at *3 (S.D.N.Y. 2008) (citations omitted); see also Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42, 47-48 (2d Cir. 1991), cert denied 503 U.S. 960, 112 S.Ct. 1561 (1992). Where evidence outside the "four corners of the [complaint]" is presented to and not excluded by the Court, the Court "is required to convert the motion from a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment." Batista v. City of New York, 2007 WL 2822211, at *3 (S.D.N.Y. 2007) (citing Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155-56 (2d Cir. 2006) (reversing District Court's order that failed to covert 12(b)(6) motion into motion for summary judgment where plaintiff did not "rely on the terms and effect of the document [submitted by defendant on motion] in drafting the complaint"). Following this authority, where as here, Prima "ask[s] the Court to weigh evidence outside of the pleadings," to wit, a fraudulently created purported version of the parties' lease agreement, as opposed to the Lease upon which Alliance sues, "and thereby test the merits of the evidence, not the complaint,

- 5 -

such action is more appropriately reserved for the summary judgment procedure, governed by Rule 56, where both parties 'may conduct appropriate discovery and submit the additional supporting materials contemplated by' that rule." Batista, 2007 WL 2922211, at *3 (S.D.N.Y. 2007) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 154 (2d Cir. 2002)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (noting that that summary judgment will be granted only "after adequate time for discovery").

Assuming that the Court treats Prima's motion as one for summary judgment, and that Prima will not stipulate that: (i) the parties agreed to the Lease and that the document annexed to the Bridges declaration is a fraud to which Alliance never agreed, much less signed, (ii) Prima failed to pay the $750,000 security deposit owed under the Lease, as opposed to three non-refundable $250,000 security deposits owed under two Lease Proposals between the parties, (iii) Prima's failure to pay Alliance the security deposit owed under the Lease constituted an Event of Default under the Lease for which Alliance is now entitled to its damages, and (iv) the quantum of Alliance's damages sustained by reason of Prima's Event of Default are as Alliance alleges, there are obviously significant issues of fact here that would preclude the entry of summary judgment.

## II.    Prima's Motion Should be Denied Even if the Court Treats it as a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

Under the pleading standard set forth in Fed. R. Civ. P. 8(a), complaints only have to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, --U.S.--, 127 S.Ct. 2197, 2200 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Specific facts are not necessary; "the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Id.

If Prima's motion is considered under Rule 12(b)(6), the Court must "accept all factual allegations" in Alliance's Complaint "as true and draw all reasonable inferences in plaintiff's favor." Ofori-Tenkorang v. Am. Int'l Group, Inc., 460 F.3d 296, 298 (2d Cir. 2006). The Supreme Court recently explained that the test is whether the "[f]actual allegations . . . raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, --U.S.--, 127 S.Ct. 1955, 1965 (2007) (internal citations omitted). In other words, a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face." Id. at 1974. "The issue" on a motion to dismiss is of course "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995). Indeed, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Bell Atlantic, 127 S.Ct. at 1965.

Alliance respectfully submits that it easily meets the standard against which its pleading must be measured if Prima's motion were considered under Rule 12(b)(6). Accepting Alliance's claims as true, the parties entered into the Lease for Prima to lease the Aircraft from Alliance for a term of forty-eight months, at $215,000 per month, Prima breached the Lease by failing to pay Alliance a $750,000 security deposit, which was among the Conditions Precedent to the Lease, and Alliance is now entitled to damages for that breach, including its lost profits under the Lease as well as its costs incurred in pursuing its damages.

Prima's arguments responding to Alliance's claims do not support dismissal of the Complaint. For instance, Prima claims that it paid the $750,000 security deposit, but that issue is in dispute. As discussed, Alliance has alleged (and the evidence shows) the $750,000 paid by

Prima was for non-refundable deposits under the Lease Proposals. Prima complains that Alliance has retained those deposits, but again, Alliance was entitled to do so as they were non-refundable under the facts and circumstances at issue and the language of the Lease Proposals. Prima also argues that Alliance did not perform under the Lease. Prima argues that "Alliance concedes in its Complaint that 'it was unable to acquire the Aircraft from AeroTurbine/Wells Fargo, and the Aircraft was sold to another party.'" Def. Br. at 8 (quoting Compl. at ¶27). The portion of ¶27 that Prima fails to mention in its argument, however, is that the Aircraft only became unavailable because of "Prima's delays leading up to the Lease, and [Prima's] eventual failure and refusal to make the $750,000 deposit due and owing under the Lease, in breach of the Lease . . . " (Compl. ¶27). Finally, and most outrageously, Prima's motion is based on a fraudulently prepared exhibit to their counsel's declaration stating that Alliance agreed the $750,000 security deposit was paid when nothing could be further from the truth. As discussed, the Lease agreed to by the parties reflected the exact opposite -- that the $750,000 security deposit had not been paid -- and for good reason, it never was paid.

## CONCLUSION

For the foregoing reasons, and based on the authorities cited herein, Alliance respectfully submits that Prima's motion to dismiss Count I of Alliance's Complaint should be denied.

Respectfully submitted,

*[signature]*

Andrew P. Fishkin (AF 7571)
Steven M. Lucks (SL 2711)
EDWARDS ANGELL PALMER & DODGE LLP
750 Lexington Avenue
New York, NY 10022
(212) 308-4411

211000

Andrew P. Fishkin (AF7571)
Steven M. Lucks (SL2711)
EDWARDS ANGELL PALMER & DODGE LLP
750 Lexington Avenue
New York, New York 10022
(212) 308-4411
*Attorneys for Plaintiff Alliance Continental Leasing LLC*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------
ALLIANCE CONTINENTAL LEASING
LLC,

        Plaintiff,

v.

PRIMA CHARTER Sp. z. o. o.,

        Defendant.
---------------------------------------------

: Case No: 08 CV 1027 (JSR)

**CERTIFICATE OF SERVICE**

I certify that I have on this 27th day of March 2008 served the attached Memorandum of Law in Opposition to Defendant's Motion to Dismiss, Declaration of Steven M. Lucks dated March 27, 2008 with exhibits thereto, and Affidavit of John C. Green in Opposition to Defendant's Motion to Dismiss dated March 26, 2008, upon:

    Paul D. Sarkozi, Esq.
    Kim F. Bridges, Esq.
    HOGAN & HARTSON LLP
    875 Third Avenue
    New York, New York 10022
    Attorneys for Defendant Prima Charter Sp. z. o. o.

by causing true and correct copies to be delivered by hand.

Dated: New York, New York
       March 27, 2008

                **EDWARDS ANGELL PALMER & DODGE LLP**

                /s/ Steven M. Lucks
                Andrew P. Fishkin (AF7571)
                Steven M. Lucks (SL2711)
                750 Lexington Avenue
                New York, NY 10022-1200
                (212) 308-4411
                (212) 308-4844

                *Attorneys for Plaintiff Alliance Continental Leasing LLC*